[Cite as *State v. Carson*, 2017-Ohio-7243.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 104998**

# STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

# DENICO CARSON

DEFENDANT-APPELLANT

## JUDGMENT:
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-15-601882-A

**BEFORE:**  McCormack, J., Keough, A.J., and Laster Mays, J.

**RELEASED AND JOURNALIZED:**  August 17, 2017

**ATTORNEY FOR APPELLANT**

Carmen P. Naso
Milton A. Kramer Law Clinic
11075 East Blvd.
Cleveland, OH 44106


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor

By: Erin Stone
Jonathan M. McDonald
Assistant County Prosecutors
Justice Center, 8th Floor
1200 Ontario Street
Cleveland, OH   44113

TIM McCORMACK, J.:

{¶1} Defendant-appellant Denico Carson appeals from his conviction of a one-year firearm specification. Carson contends the conviction was not supported by sufficient evidence. After a thorough review of the record, we affirm Carson's conviction.

## Procedural Background

{¶2} Carson, along with codefendants Michael Taylor and Jerome Williams, were charged in a multicount indictment resulting from two "controlled drug buys" at the Southpark Mall on November 24, 2015, and December 9, 2015, that were managed by the Strongsville police department. The indictment as it related to Carson charged as follows: Count 1 — trafficking in violation of R.C. 2925.03(A)(1); Count 2 — trafficking in violation of R.C. 2925.03(A)(2); Count 3 — drug possession in violation of R.C. 2925.11(A); Count 4 — trafficking in violation of R.C. 2925.03(A)(1); Count 5 — trafficking in violation of R.C. 2925.03(A)(2); Count 6 — drug possession in violation of R.C. 2925.11(A); Count 8 – having weapons while under disability in violation of R.C. 2923.13(A)(3); Count 10 — carrying concealed weapons in violation of R.C. 2923.12(A)(2); Count 11 — improperly handling firearms in a motor vehicle in violation of R.C. 2923.16(B); and Count 12 — possessing criminal tools in violation of R.C. 2923.24(A). Several counts contained forfeiture specifications, and Counts 5 and 6 contained firearm specifications.

{¶3} The trial court granted defense counsel's Crim.R. 29 motion as it related to Counts 8 (weapons while under disability) and 10 (carrying concealed weapon) and the firearm specification attached to Count 6 (possession), but the court denied counsel's motion as it pertained to the firearm specification in Count 5 (trafficking). The jury found Carson not guilty of Count 11 (improperly handling firearms in a motor vehicle). The jury, however, found Carson guilty of Counts 1 through 6, and 12, and the firearm specification attached to Count 5 (trafficking).

{¶4} It is the latter conviction — the firearm specification on Count 5 — that Carson appeals. Carson argues in his sole assignment of error that his conviction for the firearm specification was not supported by sufficient evidence.

## Evidence at Trial

{¶5} Officer Jason Glover of the Strongsville police department testified that on December 9, 2015, the department orchestrated a drug buy with Carson, through the use of a confidential informant at the SouthPark Mall. Officer Glover watched Carson and Carson's two codefendants exit a vehicle in the mall parking lot and walk toward the front of Dillard's department store, where they entered the store. The informant purchased 1.87 grams of heroin from Carson with the police department's $320 of "control money." The officer then observed Carson and his codefendants exit the building and get into a Chevy Tahoe, which was a large SUV that contained three rows of seats. Carson, the driver, drove the vehicle to Route 82, toward I-71. At this point, Officer Glover and the takedown team of officers began to follow Carson at a distance.

Officer Glover testified that while awaiting orders to stop the vehicle from the lead officer, Carson ran a red light on Route 82 at the I-71 overpass.

{¶6} Officer Zaki Hazou, who was nearby in a marked police cruiser, observed Carson make an "abrupt lane change." At that point, Officer Hazou activated his lights and siren. Carson then proceeded through a red light. Officer Hazou testified that Carson "did not stop until [the vehicle] almost got to the ramp that goes northbound." He stated that Carson proceeded for approximately 10 seconds without stopping and the vehicle "wasn't speeding up, but it wasn't stopping right away either." The officer stated that the Tahoe came to a stop at the I-71 overpass when one of the takedown vehicles blocked Carson from entering the interstate. Officer Hazou then pulled up immediately to the rear of Carson's vehicle, preventing Carson from being able to back up. Officer Hazou waited in his patrol car until the takedown team reached the Tahoe, and he then provided rear security while the other officers approached Carson's vehicle.

{¶7} Officer Michael Mendise was part of the takedown team, and he observed the suspect's vehicle leave the mall parking lot and "accelerate at a high rate of speed." After one of the police vehicles blocked Carson's vehicle and prevented it from moving, Officer Mendise approached the front windshield of the Tahoe, in order to secure the driver, and he observed silhouettes through the tinted windows. Officer Mendise testified that as another officer began breaking the tinted windows of the SUV, he observed a male behind the driver, in the second row of seats, reach back into the third row. This passenger was later identified as codefendant Michael Taylor. Officer

Mendise testified that he believed, based upon his training and experience, that the passenger was attempting to retrieve or hide something, and he yelled to the other officers in order to alert them of the passenger's movements.

{¶8} Officer Patrick O'Sullivan, another officer on the takedown team, assisted with the removal of the suspects in the Tahoe. After the three men were removed from the vehicle, the officer entered the vehicle to ensure no one was hiding behind the seats or in any hidden compartments. Officer O'Sullivan testified that as he entered the vehicle through the back passenger side door, he discovered a compartment that was "almost built into the armrest where there was a panel that was raised," where he also discovered a partially concealed firearm. The firearm was discovered in the location where the backseat passenger had been reaching. At this point, he announced to the other officers that he found a gun and he rendered the weapon safe by removing the magazine and clearing the bullets from the chamber. No one claimed ownership of the firearm.

{¶9} Officer Glover testified that the three men were searched and taken to the police station. Because the control buy money was not found upon searching the men, Officer Glover returned to the scene of the traffic stop where he discovered the buy money "folded up into a small wad" in the grassy area where the three suspects were sitting after being removed from the car. All three men were arrested and charged.

Sufficiency

{¶10} In his sole assignment of error, Carson contends that his conviction for the firearm specification accompanying his conviction for trafficking in Count 5 was not

supported by the evidence. Specifically, Carson argues that there was insufficient evidence he had actual or constructive possession of an operable firearm during the drug trafficking.

{¶11} An argument concerning the sufficiency of the evidence raises the issue of whether each element of an offense has been adequately proven to allow the case to go to the jury or to sustain the verdict as a matter of law. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). When assessing a challenge of sufficiency of the evidence, a reviewing court examines the evidence admitted at trial and determines whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.*

{¶12} A reviewing court is not to assess "whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction." *Thompkins* at 390. Essentially, sufficiency is a test of adequacy. *Id.* at 386.

{¶13} Here, Carson was convicted of drug trafficking in violation of R.C. 2925.03(A)(2), which provides that no person "shall knowingly * * * [p]repare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance * * * when the offender knows or has reasonable cause to believe that the

controlled substance * * * is intended for sale or resale by the offender or another person."

**{¶14}** R.C. 2941.141 imposes an additional one-year prison term when "the offender had a firearm on or about the offender's person or under the offender's control while committing the offense."

**{¶15}** Generally, "[o]n or about his person or under his control," or actual possession "means that 'the firearm was either carried on the defendant's person or was so near the defendant's person as to be conveniently accessible and within his immediate physical reach.'" *State v. Smith*, 8th Dist. Cuyahoga No. 93593, 2010-Ohio-4006, ¶ 11, quoting 2 *Ohio Jury Instructions,* CR Section 4 at 127 (2008); *State v. Walker*, 10th Dist. Franklin No. 14AP-905, 2016-Ohio-3185, ¶ 63 (stating that actual possession of a substance or object occurs where the object is within one's immediate physical control).

**{¶16}** Possession of a substance or object, however, may also be constructive. *State v. Jackson*, 8th Dist. Cuyahoga No. 97743, 2012-Ohio-4278, ¶ 38, citing *State v. Haynes*, 25 Ohio St.2d 264, 269-270, 267 N.E.2d 787 (1971). Constructive possession exists when an individual knowingly exercises dominion and control over an object, even though that object may not be within the individual's immediate physical possession. *State v. Hankerson*, 70 Ohio St.2d 87, 434 N.E.2d 1362 (1982), syllabus; *Westlake v. Wilson*, 8th Dist. Cuyahoga No. 96948, 2012-Ohio-2192, ¶ 36. "A party has constructive possession where, conscious of its presence, he exercises dominion and control over something even though it is not within his immediate physical possession."

*State v. Harry*, 12th Dist. Butler No. CA2008-01-013, 2008-Ohio-6380, ¶ 48, citing *Hankerson* at 91. The crucial issue therefore is not whether the accused has actual physical contact with the item, but whether the accused is capable of exercising dominion and control over the substance or object. *State v. Brooks*, 113 Ohio App.3d 88, 90, 680 N.E.2d 248 (6th Dist.1996), citing *State v. Wolery*, 46 Ohio St. 2d 316, 332, 348 N.E.2d 351 (1976).

{¶17} This court has held that, for purposes of R.C. 2941.141, the state may demonstrate an individual has dominion and control over the firearm by proving constructive possession of the firearm. *State v. Easterly*, 8th Dist. Cuyahoga No. 94797, 2011-Ohio-215, ¶ 24, citing *State v. Davis*, 8th Dist. Cuyahoga No. 93844, 2010-Ohio-5123; *State v. Wilkins*, 12th Dist. Clinton No. CA2007-03-007, 2008-Ohio-2739; *State v. Conway*, 8th Dist. Cuyahoga No. 86140, 2005-Ohio-6634.

{¶18} In analyzing constructive possession of a firearm under various weapon-related charges, this court has stated that "[i]f the evidence demonstrates that the defendant was in close proximity to the contraband, such that the defendant was able to exercise dominion or control over the contraband, this constitutes circumstantial evidence that the defendant was in constructive possession of the items." *State v. Brooks*, 8th Dist. Cuyahoga No. 94978, 2011-Ohio-1679, ¶ 17, citing *State v. Whitted*, 8th Dist. Cuyahoga No. 88979, 2007-Ohio-5069, ¶11. And although mere presence in an area where a substance or object is located does not conclusively establish constructive possession, this presence, "coupled with another factor probative of dominion or control

over the contraband, may establish constructive possession." *State v. Cooper*, 3d Dist. Marion No. 9-06-49, 2007-Ohio-4937, ¶ 26.

**{¶19}** Circumstantial evidence alone is sufficient to prove constructive possession. *State v. Baird*, 8th Dist. Cuyahoga No. 96352, 2011-Ohio-6268, ¶ 19.

**{¶20}** Moreover, the state need only show that the defendant had possession or constructive possession "at some point" during the commission of the crime. *State v. Benton*, 8th Dist. Cuyahoga No. 82810, 2004-Ohio-3116, ¶ 30; *see Walker*, 10th Dist. Franklin No. 14AP-905, 2016-Ohio-3185, at ¶ 85; *see also Wilkins*, 12th Dist. Clinton No. CA2007-03-007, 2008-Ohio-2739, at ¶ 26.

> [T]he firearm specification statute "does not require that the firearm be used in the commission of the felony, or that the defendant acquire the firearm before beginning the crime; all that is necessary is that the defendant have the firearm on his person or under his control at some point during the commission of the crime."

*Benton* at ¶ 29, quoting *State v. Powell*, 59 Ohio St.3d 62, 63, 571 N.E.2d 125 (1991).

**{¶21}** Here, there is no dispute that the firearm discovered in the Chevy Tahoe was not discovered on Carson's person; rather, the firearm was discovered in the car Carson was driving. Also, it appears unlikely that the firearm was within his "immediate physical reach," because it was discovered in the location of the third row of seats. The question therefore becomes whether Carson knowingly exercised control over the firearm at some point during the commission of the crime.

**{¶22}** Carson essentially contends that he did not have constructive possession of the firearm because he had no knowledge of the firearm and, because he was not the

owner of the vehicle and there were others in the vehicle, he could not have exercised control over the firearm.

{¶23} First, we note that the state need not establish Carson owned the vehicle in order to show he had control of the vehicle or its contents. *State v. Davis*, 8th Dist. Cuyahoga No. 104221, 2016-Ohio-7964, ¶ 14 (ownership not necessary in establishing constructive possession); *see State v. Walker*, 8th Dist. Cuyahoga No. 83035, 2004-Ohio-156, ¶ 20 (finding ownership of the vehicle "immaterial" where the defendant was the driver and the drugs were in close proximity to the driver sufficient to demonstrate dominion and control over the contraband).

{¶24} Also, the fact that Carson was not alone in the vehicle likewise does not prevent Carson from exercising control over the firearm. *State v. Tyler*, 8th Dist. Cuyahoga No. 99402, 2013-Ohio-5242, ¶ 24 (finding the fact that there were other individuals on the premises "not dispositive" of whether the defendant had constructive possession of the contraband); *State v. Howard*, 8th Dist. Cuyahoga No. 85034, 2005-Ohio-4007, ¶ 15 (concluding that exclusive control over the premises is not required in order to have constructive possession). "[E]ven if the firearms were also accessible to his accomplices [in the same vehicle], that does not mean they were not accessible to [the] appellant." *State v. Teague*, 11th Dist. Trumbull No. 2011-T-0012, 2012-Ohio-983, ¶ 54. Moreover, "it is commonly understood that two or more persons may have joint possession of the same object." *State v. Hall*, 8th Dist. Cuyahoga No.

102789, 2016-Ohio-698, ¶ 14; *State v. Wilson*, 8th Dist. Cuyahoga No. 102231, 2015-Ohio-4979, ¶ 20; *State v. Wharton*, 4th Dist. Ross No. 09CA3132, 2010-Ohio-4775.

**{¶25}** Here, the evidence shows that Carson was the sole driver of the vehicle in question and he was operating the vehicle when it drove away from the mall toward the interstate. Officer Hazou testified that the vehicle did not stop when the officer activated his lights and sirens. Rather, the vehicle ran a red light and continued to proceed to the interstate, only coming to a stop when another police cruiser blocked the vehicle from entering the interstate. After the vehicle was stopped, Officer Mendise observed the passenger behind Carson reach into the third row of seats where Officer O'Sullivan discovered the firearm, which was partially concealed in a third-row compartment.

**{¶26}** Carson's behavior in attempting to flee leads to the natural inference that he was aware of the gun's presence. *State v. Jones*, 8th Dist. Cuyahoga No. 104233, 2017-Ohio-288, ¶ 31 (finding an accused's flight from custody, resistance to arrest, concealment, and other related conduct evidence of consciousness of guilt and therefore guilt itself). Moreover, Carson's attempt to flee and the additional time used in fleeing, coupled with the furtive actions of the passenger directly behind Carson and the discovery of the partially concealed weapon directly behind that passenger, is sufficient to establish that Carson knowingly exercised dominion and control over the firearm.

**{¶27}** Carson claims that because the firearm was discovered after the drug deal and there was no evidence he possessed the firearm during the drug deal, the state could

not support the firearm specification attached to the trafficking charge. In support, he cites to *State v. Byrd*, 8th Dist. Cuyahoga No. 98037, 2012-Ohio-5728. In *Byrd*, this court reversed that portion of the trial court's judgment that convicted the defendant of a firearm specification attached to the drug trafficking offense. In that case, we found no evidence the defendant actually or constructively possessed the firearm, which was discovered at the defendant's home, in connection with a phone call wherein the defendant agreed to sell crack cocaine en route to the agreed drug buy location, "nor did Byrd possess the firearm at the time of his arrest en route to the agreed drug buy location." *Id.* at ¶ 24. *Byrd*, however, is distinguishable.

**{¶28}** In *Byrd*, the defendant was convicted of trafficking in violation of R.C. 2925.03(A)(1), which provides that "[n]o person shall knowingly * * * [s]ell or offer to sell a controlled substance." The offense at issue here, to which the firearm specification is attached, is trafficking in violation of R.C. 2925.03(A)(2), which states that no person "shall knowingly * * * [p]repare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance * * *." Here, the state concedes there is no evidence Carson possessed the gun during the drug deal in the mall, which would relate to the trafficking charge of "[s]ell or offer to sell." However, the record demonstrates that Carson drove the vehicle to the mall in order to sell the 1.87 grams of heroin, made the sale with the police informant, and proceeded directly to the Chevy Tahoe, which Carson then drove away from the mall. And there is no evidence Carson made any stops prior to being pulled over in order to purchase a firearm.

Therefore, it is reasonable for a jury to conclude that Carson had the firearm under his control "at some point" during the transporting or delivering of the controlled substance. *Benton*, 8th Dist. Cuyahoga No. 82810, 2004-Ohio-3116.

{¶29} Under the totality of the circumstances, we find that a rational trier of fact could conclude that the gun discovered in the Chevy Tahoe was under Carson's control during the commission of the trafficking as charged in Count 5 of the indictment. Accordingly, the state presented sufficient evidence to support Carson's conviction of the firearm specification accompanying that charge.

{¶30} Carson's sole assignment of error is overruled.

{¶31} Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
TIM McCORMACK, JUDGE

KATHLEEN ANN KEOUGH, A.J., and
ANITA LASTER MAYS, J., CONCUR