[Cite as *E. Liverpool v. Boyd*, 2018-Ohio-355.]

STATE OF OHIO, COLUMBIANA COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| CITY OF EAST LIVERPOOL, | ) | |
| | ) | |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | CASE NO. 16 CO 0032 |
| V. | ) | |
| | ) | OPINION |
| GERALD BOYD, | ) | |
| | ) | |
| DEFENDANT-APPELLANT. | ) | |

CHARACTER OF PROCEEDINGS:     Criminal Appeal from East Liverpool
Municipal Court of Columbiana County,
Ohio
Case No. 2016 CRB 00607

JUDGMENT:                                      Affirmed.

APPEARANCES:
For Plaintiff-Appellee                        Attorney Timothy J. McNicol
105 South Market Street
Lisbon, Ohio 44432


For Defendant-Appellant                   Attorney Lynsey Lyle-Opalenik
991 Main Street
Wellsville, Ohio 43968



JUDGES:

Hon. Gene Donofrio
Hon. Mary DeGenaro
Hon. Carol Ann Robb


Dated: January 26, 2018

DONOFRIO, J.

{¶1} Defendant-appellant, Gerald Boyd, appeals the judgment of the East Liverpool Municipal Court convicting him on one count of public nuisance in violation of East Liverpool Housing Code Ordinance 1329.05(b), a misdemeanor of the second degree.

{¶2} Appellant owns and operates Jerry's Auto Body Shop in East Liverpool. Appellant utilizes a coal/wood burning furnace to heat his body shop and has done so for over thirty years.

{¶3} On February 4, 2016, appellant was notified via letter by plaintiff-appellee, the City of East Liverpool, that the furnace at his body shop was creating a nuisance in the neighborhood. The February 4, 2016 letter ordered appellant to cease using his furnace or to have repairs made to abate the nuisance to the satisfaction of the East Liverpool Fire Department Chief and/or the East Liverpool Planning Department.

{¶4} After receiving the letter, appellant's furnace was inspected by the assistant fire chief for the City of East Liverpool, David Edgell (Edgell). Edgell found no violations with appellant's furnace. Appellant was therefore under the belief that his furnace was compliant with the East Liverpool Fire Department and made no repairs. However, the city charged appellant with a public nuisance violation for smoke emanating from his furnace. The matter proceeded to trial before the court.

{¶5} At trial, the city called three witnesses: Gregg Stowers (Gregg), Norma Jane McMahon (Norma), and Craig Stowers (Craig). All three of the city's witnesses live in the immediate vicinity of appellant's body shop. The city's witnesses moved to their respective residences after appellant's business was already established and while he was using his furnace. The three witnesses for the city all testified to the smoke that was emanating from appellant's furnace and all testified to the various inconveniences the smoke was causing them.

{¶6} Appellant called two witnesses in his defense: Darren Machuga (Machuga) and Edgell. Machuga is a field technician and an environmental specialist with the Ohio Environmental Protection Agency (Ohio EPA). Machuga testified that

he inspected the furnace twice and found that it was not in violation of any EPA regulations. Edgell testified that he inspected appellant's furnace on multiple occasions and found no problems or violations.

**{¶7}** On October 14, 2016, the trial court returned a verdict of guilty and sentenced appellant to pay $229.00 in fines and court costs. Appellant requested a stay of his sentence pending the outcome of his appeal with the trial court which was granted. Appellant timely filed this appeal on November 10, 2016. Appellant raises two assignments of error.

**{¶8}** Appellant's first assignment of error states:

THE EVIDENCE PRESENTED BY THE CITY OF EAST LIVERPOOL WAS INSUFFICIENT AS A MATTER OF LAW.

**{¶9}** Appellant argues that the evidence presented by the city was insufficient to sustain a conviction for two reasons. First, the person who sent appellant the letter claiming appellant's furnace was a violation of the housing ordinance, William Cowen, was never called to testify. Appellant argues that this was a violation of his right to confront witnesses against him. Second, appellant argues that insufficient evidence for a conviction existed because the February 4, 2016 letter stated that his furnace needed to conform to the satisfaction of the East Liverpool Fire Department, which appellant contends it did.

**{¶10}** Sufficiency of the evidence is the legal standard applied to determine whether the case may go to the jury or whether the evidence is legally sufficient as a matter of law to support the verdict. *State v. Dickson*, 7th Dist. No. 12 CO 50, 2013-Ohio-5293, ¶ 10 citing *State v. Thompkins*, 80 Ohio St.3d 89, 113, 684 N.E.2d 668 (1997). Sufficiency is a test of adequacy. *Id.* Whether the evidence is legally sufficient to sustain a verdict is a question of law. *Id.* In reviewing the record for sufficiency, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements proven beyond a reasonable doubt. *Id.* citing *State v. Goff*, 82 Ohio St.3d 123, 138,

694 N.E.2d 916 (1998). When evaluating the sufficiency of the evidence to prove the elements, it must be remembered that circumstantial evidence has the same probative value as direct evidence. *Id.* citing *State v. Jenks*, 61 Ohio St.3d 259, 272-273, 574 N.E.2d 492 (1991) (superseded by state constitutional amendment on other grounds).

{¶11} Appellant was convicted of violating East Liverpool Housing Code 1329.05(b). This housing code section provides: "[f]uel burning, heat producing equipment shall be installed and maintained so that the emission or discharge into the atmosphere of smoke, dust, particles, odors, or other products of combustion will not create a nuisance or be detrimental to the health, comfort, safety or property of any other person." Pursuant to East Liverpool Housing Code 1321.99, violations of 1329.05(b) are misdemeanors of the second degree.

{¶12} Addressing the city's three witnesses individually, Gregg testified that his residence is approximately 30-50 feet from appellant's body shop. (Tr. 5). Gregg further testified that appellant was operating a furnace that was causing a smoke issue in the neighborhood. (Tr. 6). Gregg also testified that he can smell the smoke while inside of his house. (Tr. 6). Gregg testified that the smell gets into his curtains and couches and causes him headaches. (Tr. 7). Finally, Gregg testified that one day, the smoke was so bad, he had to leave his home. (Tr. 8).

{¶13} Norma testified that she lives next door to appellant's body shop. (Tr. 23). Norma testified that she has witnessed smoke and other particles coming from appellant's chimney. (Tr. 24). As for the effects of the smoke, Norma testified that: it smells "horrible," black soot accumulates in between her windows, she can smell it inside of her home, it gives her a sore throat, and she has two air purifiers running in her bedroom as a result of the smoke. (Tr. 24). Norma also testified that the smoke emanates from appellant's furnace seven days a week. (Tr. 25). Finally, Norma testified that she contacted the fire department either three or four times regarding the smoke. (Tr. 26).

{¶14} Craig testified that he lives "catty corner" from appellant's business and

approximately 100 feet away. (Tr. 34). Craig has seen the smoke emanating from appellant's chimney on multiple occasions. (Tr. 35). In addition to his home, Craig also owns houses adjacent to his home and has to regularly spray his various homes' porches and windows to remove soot from the furnace. (Tr. 36). Additionally, Craig testified that he has to continually wash soot off of his truck. (Tr. 36). Finally, Craig testified that he does smell the smoke but not as bad as other homes that may be closer to appellant's body shop. (Tr. 37). Craig went as far as to say that the smoke has even made his cat smell. (Tr. 37).

**{¶15}** The testimony of the city's witnesses established that smoke and particles were emanating from appellant's furnace which was detrimental to the comfort or property of the city's witnesses.

**{¶16}** Regarding William Cowen, a review of the record reveals that he is the director of the East Liverpool Planning and Development Department. Cowen was the person who signed the affidavit complaint bringing this charge against appellant. But the fact that Cowen did not testify at appellant's trial does not violate his right under the Confrontation Clause. The Confrontation Clause applies only to "witnesses," meaning those who "bear testimony against the accused." *State v. Stahl*, 111 Ohio St.3d 186, 2006-Ohio-5482, 855 N.E.2d 834, ¶ 15 citing *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177. The February 4, 2016 letter was never offered nor introduced as an exhibit at trial. Because Cowen did not bear any testimony against appellant, appellant's right under the Confrontation Clause was not violated.

**{¶17}** Addressing the potential compliance with the February 4, 2016 letter argument, the letter was not admitted into evidence at appellant's trial. In a sufficiency challenge, the reviewing court considers evidence that was admitted at trial. *State v. Yarbrough*, 95 Ohio St. 3d 227, 2002-Ohio-2126, 767 N.E.2d 216, ¶ 80 citing *Lockhart v. Nelson*, 488 U.S. 33, 109 S.Ct. 285, 102 L.Ed.2d 265 (1988). As the city established all of the elements of the offense, appellant's conviction was sufficient as a matter of law.

**{¶18}** Accordingly, appellant's first assignment of error lacks merit and is overruled.

**{¶19}** Appellant's second assignment of error states:

THE VERDICT OF GUILTY AS TO APPELLANT FOR VIOLATING EAST LIVERPOOL HOUSING CODE ORDINANCE 1329.05(B) AND SUBSEQUENTLY ASSESSING A CRIMINAL PENALTY AS DESIGNATED BY EAST LIVERPOOL ORDINANCE NUMBER 1321.99 WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

**{¶20}** Appellant argues that there is a sufficient amount of evidence in his favor and a lack of evidence from the city, which indicates that the trial court's decision to convict him was against the manifest weight of the evidence.

**{¶21}** In determining whether a verdict is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences and determine whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Thompkins*, 78 Ohio St.3d at 387. "Weight of the evidence concerns 'the inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other.' " *Id.* (Emphasis sic.) In making its determination, a reviewing court is not required to view the evidence in a light most favorable to the prosecution but may consider and weigh all of the evidence produced at trial. *Id.* at 390.

**{¶22}** *Thompkins* addressed a manifest weight argument in the context of a jury trial. But the standard of review is equally applicable when reviewing a manifest weight challenge from a bench trial. *State v. Layne*, 7th Dist. No. 97 CA 172, 2000 WL 246589, at *5 (Mar. 1, 2000). A reviewing court will not reverse a judgment as being against the manifest weight of the evidence in a bench trial where the trial court could reasonably conclude from substantial evidence that the state has proved the

offense beyond a reasonable doubt. *State v. Hill*, 7th Dist. No. 09-MA-202, 2011-Ohio-6217, ¶ 49, citing *State v. Eskridge*, 38 Ohio St.3d 56, 59, 526 N.E.2d 304 (1988).

**{¶23}** Yet granting a new trial is only appropriate in extraordinary cases where the evidence weighs heavily against the conviction. *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). This is because determinations of witness credibility, conflicting testimony, and evidence weight are primarily for the trier of the facts who sits in the best position to judge the weight of the evidence and the witnesses' credibility by observing their gestures, voice inflections, and demeanor. *State v. Rouse*, 7th Dist. No. 04-BE-53, 2005-Ohio-6328, ¶ 49, citing *State v. Hill*, 75 Ohio St.3d 195, 205, 661 N.E.2d 1068 (1996); *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. Thus, "[w]hen there exist two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one we believe." *State v. Dyke*, 7th Dist. No. 99-CA-149, 2002-Ohio-1152.

**{¶24}** Appellant points out several instances in which, he contends, it shows the trial court's decision was against the manifest weight of the evidence. First, the district representative for the Division of Air Pollution Control of the Ohio EPA and an assistant fire chief for the East Liverpool Fire Department both testified that there were no issues with appellant's furnace. Second, the assistant fire chief's report indicated that the smoke was "never as bad as the caller [Norma] states" and that the assistant chief believed this to be a neighborhood dispute. Third, the city produced no expert witnesses to testify that appellant's furnace was the proximate cause of any smoke, soot, and smell complained of by the city's witnesses. Fourth, the city's witnesses testified that there exists smoke/steam producing industries around the East Liverpool area. Finally, appellant argues that the testimony of the city's witnesses was self-serving compared to his witnesses at trial.

**{¶25}** As stated previously, Edgell testified that he had personally investigated appellant's furnace on February 20, 2016, and found no problems and made no

recommendations about repairing or replacing the furnace. (Tr. 72-74). Additionally, Machuga testified that he investigated appellant's furnace on February 9, 2016 and February 29, 2016, and found that appellant was only burning wood and coal and only witnessed heat waves coming out of appellant's stack. (Tr. 51-53).

{¶26} However, Edgell and Machuga's testimony is limited to the few times they each inspected appellant's business and furnace. The three witnesses for the city all testified that they live in close proximity to appellant and have lived there for several years. (Tr. 5, 23, 34-37). The three witnesses for the city also testified that, on numerous occasions, they saw smoke coming from appellant's furnace, smelled smoke, and/or had to continually clean their property due to soot accumulation from the furnace.

{¶27} Nevertheless, appellant asserts that the city's lack of an expert witness to testify that appellant's furnace was the proximate cause of the smoke smell and soot continues to show that the trial court's verdict was against the manifest weight of the evidence. Appellant asserts that this point is even further displayed by the fact that city's witnesses testified that the East Liverpool area is surrounded by businesses that all emit smoke. (Tr. 14, 44).

{¶28} But all three of the city's witnesses testified that they lived in the immediate vicinity of appellant's body shop. (Tr. 5, 23, 34-37). Furthermore, all three of the city's witnesses testified that they continually see smoke coming from appellant's body shop and the various effects the smoke had on each of them. (Tr. 5-6, 23-26, 34-37). The mere fact that there were businesses surrounding the East Liverpool area that were also producing smoke does not negate the testimony that appellant's furnace was producing smoke and soot. There is also no evidence in the record as to how far these businesses are from the neighborhood at issue.

{¶29} Finally, appellant asserts that the city's witnesses' credibility was hindered. Appellant argues that this is merely a neighborhood dispute and the witnesses' testimony is self-serving. Regarding the neighborhood dispute, Edgell provided testimony that the reason for Norma calling the East Liverpool Fire

Department concerning appellant's furnace was merely a "neighborhood dispute." (Tr. 71, Exhibits B, C). However, Edgell did not provide any evidence as to why he believed it to be a neighborhood dispute. Edgell's report regarding Norma's February 20, 2016 call to the East Liverpool Fire Department stated "I think this is a neighborhood dispute." (Tr. 71, Exhibit C). It is also a reasonable inference that Norma continued to call the East Liverpool Fire Department because the smoke was a continuing problem.

**{¶30}** Regarding the self-serving nature of all of the city's witnesses' testimony, to the extent that the furnace is causing these effects, the city's witnesses would gain the benefit of not having smoke permeate through their neighborhood. But there is no evidence that the trial court did not consider the potential bias from the city's three witnesses. Ultimately, appellant's conviction was not against the manifest weight of the evidence.

**{¶31}** Accordingly, appellant's second assignment of error is without merit and overruled.

**{¶32}** For the reasons stated above, the trial court's judgment is hereby affirmed.

DeGenaro, J., concurs

Robb, P.J., concurs