[Cite as *State v. Fulton*, 2024-Ohio-671.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
MAHONING COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

TAVON MAURICE FULTON,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 23 MA 0043**

---

Criminal Appeal from the
Court of Common Pleas of Mahoning County, Ohio
Case No. 2022 CR 293

**BEFORE:**
Mark A. Hanni, Cheryl L. Waite, Carol Ann Robb, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Gina DeGenova,* Mahoning County Prosecutor, and *Atty. Edward A. Czopur,* Assistant Prosecuting Attorney, Mahoning County Prosecutor's Office, for Plaintiff-Appellee and

*Atty. Richard D. Hixson*, for Defendant-Appellant.

Dated: February 22, 2024

**HANNI, J.**

{¶1} Defendant-Appellant, Tavon Maurice Fulton, appeals from a Mahoning County Common Pleas Court judgment convicting him of three counts of felony drug possession, each with forfeiture specifications. Appellant was sentenced to a total of three years in prison. On appeal, he contends that sufficient evidence is lacking for his convictions and they are against the manifest weight of the evidence.

{¶2} For the following reasons, Appellant's assignments of error lack merit and we affirm his convictions.

{¶3} On May 6, 2022, at approximately 8:15 p.m., Officer Villaplana of the Youngstown Police Department was on patrol driving eastbound on Mahoning Avenue with Officers Fred Herdman and Carlo Eggelston, Jr. They observed a red Dodge Durango fail to stop at a stop sign and pull in front of another vehicle. They also noticed that the windows of the Durango were heavily tinted. Officer Villaplana signaled for the driver to pull over for a traffic stop. Officer Villaplana turned his body camera on as he exited his car.

{¶4} Upon approaching the driver's side of the Durango, Officer Villaplana smelled a strong odor of marijuana. He asked the driver, Brendon Moorer, for his driver's license and registration, but Moorer was unable to produce this information. Moorer identified his name and social security number for Officer Villaplana. While speaking with Moorer, Officer Villaplana observed a marijuana cigar in plain view in the front of the Durango. Officer Villaplana asked Moorer to step out of the vehicle.

{¶5} As Officer Villaplana patted Moorer down for safety, he felt a bulge in Moorer's pocket. When asked about the bulge, Moorer told Officer Villaplana that it was narcotics. Officer Villaplana reached into Moorer's pocket and retrieved the drugs, which were packaged in a tied-off baggie. In Officer Villaplana's experience, narcotics were packaged for sale in tied-off baggies and usually hidden in vehicles when they are pulled over for a traffic stop. Officer Villaplana detained Moorer in handcuffs pending further investigation.

{¶6} Officer Villaplana requested that the other passengers exit the Durango so that officers could search the vehicle. A female was seated in the passenger front seat

and Appellant was seated on the passenger side in the second row of the three-row vehicle.

**{¶7}** Officer Villaplana searched the front driver's side and Officer Eggleston, Jr. searched the corresponding front passenger's side. Officer Villaplana found more marijuana in the center console in the front seat and more pills that matched those found on Moorer's person.

**{¶8}** Upon searching the second-row driver's side of the vehicle, Officer Villaplana lifted the back of the second-row seat forward. He found three tied-off baggies filled with substances. The baggies were within Appellant's reach and located a few feet away from where he had been sitting. The officers also found an empty fanny pack in the second row near the passenger side. Officer Villaplana indicated that in his experience of investigating narcotics cases, individuals who carry fanny packs or similar packs usually carry narcotics and/or guns in them.

**{¶9}** Officer Villaplana asked the other officers to detain Appellant as the drugs were within his reach and not those who had been in the front seats. As he was being handcuffed, Officer Villaplana noticed that Appellant became very nervous.

**{¶10}** The Ohio Bureau of Criminal Investigation analyzed the baggies of substances attributed to Appellant from the back of the second row. Although Officer Villaplana originally thought that the first baggie contained OxyCodone pills, the analysis revealed that the 55 pills contained 6.19 grams of a compound found to contain Fentanyl. The second baggie contained 10 Tramadol pills, and the third baggie contained cocaine. Officer Villaplana also found $140 in cash on Appellant's person. Officer Villaplana's experience in drug investigations led him to believe that amount of cash with baggies of drugs are usually the byproduct of selling illegal drugs.

**{¶11}** Officer Eggleston, Jr. searched the passenger side of the Durango and had his body camera on during the search and arrest. As Appellant and Moorer were seated on the sidewalk during the search, Eggleston Jr.'s body camera and the body camera of another officer picked up an argument between Moorer and Appellant about the fanny pack and the drugs found behind the second row driver's side seat. Moorer denied owning those narcotics and claimed ownership of only the narcotics and marijuana found in the driver's front-row area.

Case No. 23 MA 0043

{¶12} On June 16, 2022, a Mahoning County Grand Jury indicted Appellant for: (1) aggravated possession of drugs, a third-degree felony; (2) possession of cocaine, a fifth-degree felony; (3) possession of drugs, a fifth-degree felony; and (4) aggravated possession of drugs, a fifth-degree felony. Each count also contained money forfeiture specifications.

{¶13} On January 19, 2023, a superseding indictment was filed against Appellant charging him with: (1) possession of a fentanyl-related compound in violation of R.C. 2925.11(A) and R.C. 2925.11(C)(11)(c), a third-degree felony; (2) possession of cocaine in violation of R.C. 2925.11(A) and R.C. 2925.11(C)(4)(a), a fifth-degree felony; and (3) possession of drugs in violation of R.C. 2925.11(A) and R.C. 2925.11(C)(2)(a), a fifth-degree felony.

{¶14} The case proceeded to jury trial where the State presented the testimony of Officers Villaplana and Eggleston, Jr., and Officer Bigowsky, who received the baggies of substances found at the scene, prepared them for analysis by the Bureau of Criminal Investigation, and received the laboratory analysis reports.

{¶15} At the conclusion of the State's case, Appellant's counsel made an unsuccessful Crim.R. 29 motion for acquittal.

{¶16} On January 24, 2023, the jury found Appellant guilty on all counts and specifications.

{¶17} On February 6, 2023, Appellant filed a motion for a new trial. He asserted that insufficient evidence was presented against him to sustain his convictions. The trial court denied the motion on February 15, 2023.

{¶18} On March 21, 2023, the trial court held a sentencing hearing and sentenced Appellant to: two years in prison on the fentanyl-related conviction; one year in prison on the cocaine conviction to run consecutively to the two-year sentence; and one year in prison on the drug possession conviction to run concurrently. He was sentenced to a total term of three years in prison.

{¶19} Appellant filed this appeal asserting two assignments of error. In his first assignment of error, Appellant asserts:

**THE JURY AND TRIAL COURT ERRED, RESPECTIVELY, BY RETURNING A VERDICT OF GUILTY AND DENYING APPELLANT'S**

Case No. 23 MA 0043

**CRIM. R. 29 MOTION, AS INSUFFICIENT EVIDENCE WAS PRESENTED TO SUSTAIN CONVICTIONS ON THREE COUNTS OF DRUG POSSESSION UNDER R.C. 2925.11.**

**{¶20}** Appellant contends that the State presented insufficient evidence of possession for each of the drug charges under R.C. 2925.11. He acknowledges that "actual" and "constructive" possession are each sufficient to sustain a conviction for drug possession if proven beyond a reasonable doubt. However, he cites R.C. 2925.01(K) as providing that possession "may not be inferred from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found."

**{¶21}** Appellant discusses *State v. Kingsland,* 177 Ohio App.3d 655, 2008-Ohio-4148, 895 N.E.2d 633, ¶ 13 (4th Dist.), and *State v. Cauthon*, 5th Dist. Fairfield No. 18-CA-41, 2019-Ohio-1809, and asserts that his case is more similar to *Kingsland*. He explains that in *Kingsland*, *supra*, at ¶ 20, the appellate court found that insufficient evidence was presented to sustain the defendant's conviction for the possession of chemicals for the manufacture of drugs. Appellant quotes the appellate court's determination that, "none of the State's evidence indicates that Kingsland should have or could have known that he was in close proximity to illegal chemicals based upon their appearance and location in the truck." *Id.* Appellant cites the court's findings in that case that the defendant was a passenger in the vehicle, he did not own the vehicle, and the chemicals were found in the bed of the vehicle. *Id.* He notes that the court further held that constructive possession also requires a showing that the person was conscious that the object was present. *Id.*

**{¶22}** Contrasting *Kingsland*, Appellant cites the Fifth District's decision in *Cauthon, supra*, at ¶ 17, in which the appellate court found sufficient evidence to sustain the defendant's conviction for the possession of methamphetamine. Appellant highlights the appellate court's determination that the defendant was the sole occupant of the vehicle, the drugs were discovered in the center console of the vehicle, and the officers found the drugs alongside some of the defendant's personal belongings.

**{¶23}** In asserting that his case is similar to *Kingsland,* Appellant contends that he did not own the Durango, no evidence established that he owned the fanny pack, which

Case No. 23 MA 0043

was empty anyway, and no fingerprints were taken from the fanny pack or from the baggies of illegal drugs found behind the second-row seat. He submits that the only evidence that the State presented to convict him was that: (1) he was located near the drugs found in the back of the SUV; (2) he was located near a fanny pack found in the second row of the SUV; (3) a strong odor of marijuana emanated from the SUV; (4) the windows of the SUV were heavily tinted; (5) Moorer, a hearsay declarant, identified Appellant as the owner of the drugs and fanny pack, which Appellant denied; and (6) Appellant was very nervous during the stop. Appellant contends that none of this evidence suffices to prove that he knew about the drugs hidden behind the second-row seat. He asserts that the State's theory was nothing more than speculation.

{¶24} Appellee addresses Appellant's second assignment of error first concerning manifest weight of the evidence. Appellee cites *State v. Pollitt*, 4th Dist. Scioto No. 08CA3263, 2010-Ohio-2556, and *State v. Lombardi*, 9th Dist. Summit No. 22435, 2005-Ohio-4942, (quoting *State v. Roberts*, 9th Dist. Lorain No. 96CA006462, 1997 WL 600669 (Sept. 17 1997)), and concludes that since Appellant's convictions are not against the manifest weight of the evidence, the evidence is also sufficient to sustain the convictions by operation of law.

{¶25} Appellee sets forth the sufficiency of the evidence standard of review and relies on its manifest weight analysis to support its sufficiency assertion. Appellee submits that sufficient evidence of constructive possession was presented through the following circumstantial evidence: (1) Appellant was seated near where the drugs were found; (2) no one else in the Durango but Appellant could have reached the area where the drugs were found; (3) it appeared that the drugs were placed or dropped from Appellant's position to behind the second row of seats; (4) Appellant was found with cash on his person; (5) an empty fanny pack was found near where Appellant had been sitting; (6) Appellant became extremely nervous when he was placed under arrest; (7) Moorer admitted that the drugs found in the front seat were his, but stated that Appellant owned the drugs found behind the second row of seats; and (8) Moorer and Appellant argued about who owned the drugs found behind the second-row seat.

{¶26} Appellee cites to *State v. Barbee*, 9th Dist. Lorain No. 07CA009183, 2008-Ohio-3587, where the Ninth District Court of Appeals held that the weight of the evidence

Case No. 23 MA 0043

supported defendant's conviction for drug possession when he borrowed a car and cocaine was discovered hidden inside of an audio speaker in the trunk. Appellee quotes the court's holding that "[r]eadily usable drugs in close proximity to an accused may constitute sufficient circumstantial evidence to support a finding of constructive possession." *Id.* at ¶ 26. Appellee also quotes the court's determination that, "the crucial issue is not whether the accused had actual physical contact with the article concerned, but whether the accused was capable of exercising dominion or control over it." *Id.* at ¶ 30, citing *State v. Brooks*, 113 Ohio App.3d 88, 680 N.E.2d 248 (6th Dist. July 26, 1996).

**{¶27}** Appellant's first assignment of error lacks merit. Sufficiency of the evidence is the legal standard applied to determine whether the case may go to the jury or whether the evidence is legally sufficient as a matter of law to support the verdict. *State v. Dickson*, 7th Dist. Columbiana No. 12 CO 50, 2013-Ohio-5293, ¶ 10, citing *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997). Sufficiency is a test of adequacy. *Id.* Whether the evidence is legally sufficient to sustain a verdict is a question of law. *Id.*

**{¶28}** In reviewing the record for sufficiency, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements proven beyond a reasonable doubt. *Id.*, citing *State v. Goff*, 82 Ohio St.3d 123, 138, 694 N.E.2d 916 (1998). When evaluating the sufficiency of the evidence to prove the elements, it must be remembered that circumstantial evidence has the same probative value as direct evidence. *Id.*, citing *State v. Jenks*, 61 Ohio St.3d 259, 272-273, 574 N.E.2d 492 (1991) (superseded by state constitutional amendment on other grounds).

**{¶29}** A sufficiency of the evidence challenge tests the burden of production while a manifest weight challenge tests the burden of persuasion. *Thompkins, supra,* at 390, 678 N.E.2d 541 (Cook, J., concurring). Therefore, when reviewing a sufficiency challenge, the court does not evaluate witness credibility. *State v. Yarbrough*, 95 Ohio St.3d 227, 2002-Ohio-2126, 767 N.E.2d 216, ¶ 79. Instead, the court looks at whether the evidence is sufficient if believed. *Id.* at ¶ 82.

**{¶30}** Appellant challenges only the possession element of R.C. 2925.11(A) in effect at the time of his arrest and conviction. The statute at that time provided that "(A) [n]o person shall knowingly obtain, possess, or use a controlled substance or a controlled

substance analog." As Appellant acknowledges, "possession" includes constructive possession. *State v. Veon*, 7th Dist. Columbiana No. 22 CO 0045, 2023-Ohio-3333, ¶ 13, citing *State v. Carter*, 7th Dist. Jefferson No. 97-JE-24, 2000 WL 748140, *4 (May 30, 2000). "Constructive possession exists when an individual exercises dominion and control over an object, even though that object may not be within his immediate physical possession." *Id.*, quoting *State v. Wolery*, 46 Ohio St.2d 316, 329, 348 N.E.2d 351 (1976). Possession "may not be inferred from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K).

{¶31} While Appellant relies on *Kingsland*, 177 Ohio App.3d 655, 2008-Ohio-4148, 895 N.E.2d 633 (4th Dist.), that case is distinguishable. There, the defendant was convicted of possessing chemicals for the manufacture of methamphetamine. He was the sole passenger in a truck driven by someone who was not its owner. The arresting officer stopped the truck because it lacked a bumper and had a cracked windshield. The officer testified that when he approached the truck, he looked into its bed to make sure no one was there. At that time, he did not see the lithium batteries, bottles and jar containing the milky residue left over from a methamphetamine lab cook. As he approached the truck, he smelled a strong odor of ether, which is used in producing methamphetamine. When he looked more closely in the bed of the truck, he found a bag that contained a capped mason jar with a rubber tube attached and he believed that he found a meth lab. He asked Appellant about the contents in the bed of the truck and he responded that it was not his. The officer found that the defendant was very nervous and jittery.

{¶32} A second officer arrived at the scene and an inventory search discovered new lithium batteries and a glass bottle with milky residue between the driver and passenger seats. The bed of the truck contained lithium battery shells, and plastic bottles and jars with the same milky residue. Both the driver and Appellant were arrested, with Appellant continuing to deny owning the contents.

{¶33} The appellate court held that insufficient evidence was presented to establish that Appellant had constructive possession of the contents. *Kingsland, supra,* at ¶ 20. The court reasoned that:

Case No. 23 MA 0043

The state's evidence showed that the drugs were found in the pickup, that neither the driver nor Kingsland owned the pickup, and that Kingsland was a passenger in the pickup for some unknown duration. The driver did not testify. None of the state's evidence indicates that Kingsland should have or could have known that he was in close proximity to illegal chemicals based upon their appearance and location in the truck. In order to conclude that it was Kingsland who was in control of the chemicals, jars, and bottles rather than the driver or the owner of the truck, the jury would have to speculate. Officer Caldwell testified that Kingsland appeared "somewhat very nervous," but we do not believe that an individual acting "somewhat very nervous" in itself suffices to show guilt in the absence of any other evidence. [citations omitted].

*Id.*

{¶34} Contrarily in this case, Officer Villaplana found three baggies of drugs behind the driver's side second-row seat of the Durango. They were within only the arm's reach of Appellant, who was the only person seated in the second row where the three baggies of drugs were found. Officer Villaplana testified that the individuals in the front seats could not have reached over to throw the drugs and have them land where he found them. He also testified that a strong odor of marijuana emanated from the Durango as he approached. Officer Villaplana testified that an empty fanny pack was also found near where Appellant was seated and such bags were used by those who sell illegal drugs to transport them. Officer Eggleston, Jr. testified that the fanny pack was located directly next to where Appellant was seated in the Durango and it was empty except for a pair of AirPods, which he thought was unusual. (Tr. at 293-294). He explained that in his narcotics investigation experience, people usually carry things in a fanny pack and it made him believe that someone removed items from the fanny pack and placed them somewhere else. (Tr. at 294). Officer Eggleston, Jr. also testified that an argument occurred between Moorer and Appellant over Appellant taking ownership of the three baggies. Appellant was also found with $140 on his person.

{¶35} This Court has held that while a defendant's mere presence near where drugs are located is insufficient to establish constructive possession, the defendant's

proximity to the drugs "may constitute *some* evidence of constructive possession." (emphasis in original). *State v. Blake,* 7th Dist. Columbiana No. 22 CO 0020, 2023-Ohio-2748, ¶ 26, quoting *State v. Hankerson,* 70 Ohio St.2d 87, 91, 434 N.E.2d 1362 (1982). We held that, "[w]hen drugs are readily usable and found in very close proximity to a defendant these factors may constitute circumstantial evidence and support a conclusion that the defendant had constructive possession of the drugs." *Blake*, *supra*, citing *State v. Barker*, 7th Dist. Jefferson No. 05-JE-21, 2006-Ohio-1472, ¶ 78, quoting *State v. Kobi*, 122 Ohio App.3d 160, 174, 701 N.E.2d 420 (1997).

**{¶36}** It is true that Appellant did not own the Durango. Further, the three tied-off baggies found behind the second-row driver's seat were not in plain view. However, Appellant was the only person seated in the second row adjacent to where the baggies were found and only he had access to them within an arm's reach. He also had $140 in cash on his person, marijuana and other drugs were found in the Durango, and the driver claimed ownership of only the drugs found in the front row. The driver claimed that Appellant owned the three baggies of drugs found in the backseat area.

**{¶37}** "A defendant's conviction for drug possession can be based upon circumstantial evidence of possession." *State v. DeSarro*, 7th Dist. Columbiana No. 13 CO 39, 2015-Ohio-5470, ¶ 41, citing *State v. Pankey*, 7th Dist. Mahoning No. 07 MA 2, 2008-Ohio-3091, ¶ 44. "Circumstantial evidence and direct evidence inherently possess the same probative value and therefore should be subjected to the same standard of proof." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492, syllabus (1991). Further, when the state relies upon circumstantial evidence to prove an essential element, "there is no need for such evidence to be irreconcilable with any reasonable theory of innocence in order to support a conviction." *Id*.

**{¶38}** Viewing the evidence in a light most favorable to the prosecution, sufficient evidence supports Appellant's convictions.

**{¶39}** Accordingly, Appellant's first assignment of error lacks merit and is overruled.

**{¶40}** In his second assignment of error, Appellant asserts:

**THE JURY'S VERDICTS OF GUILTY WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE**.

Case No. 23 MA 0043

{¶41} Appellant acknowledges that convictions will be reversed as against the manifest weight of the evidence only in exceptional circumstances. He again cites to the six pieces of evidence presented by the State and argues that none of this suffices to establish that he knew that drugs were present in the Durango. He asserts that mere proximity is insufficient to establish constructive possession and no evidence was presented that the empty fanny pack had anything to do with the drugs or that it belonged to him. He also contends that the mere fact that marijuana could be smelled in the Durango cannot imply that he knew that more serious drugs were present. He further contends that other possible purposes exist for having window tint and his nervousness is not enough to establish his awareness of the drugs.

{¶42} Appellee contends that constructive possession of the three baggies of drugs was proven by circumstantial evidence. Appellee submits that at trial, it was shown that Appellant was seated within an arm's reach of the three baggies of drugs, no one else in the SUV could have reached or thrown the drugs where they were found, Appellant had cash on his person, an empty fanny pack was found near where he sat, and Moorer stated that the drugs in the front were his, but the ones in the back were that of Appellant.

{¶43} In determining whether a verdict is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences and determine whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Thompkins*, 78 Ohio St.3d at 387. "Weight of the evidence concerns 'the inclination of *the greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other.' " *Id*. (Emphasis in original). In making its determination, a reviewing court is not required to view the evidence in a light most favorable to the prosecution but may consider and weigh all of the evidence produced at trial. *Id.* at 390.

{¶44} Still, determinations of witness credibility, conflicting testimony, and evidence weight are primarily for the trier of the facts. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. "A trial court must consider 'all the attendant facts and circumstances in order to determine if a defendant knowingly possessed a controlled substance.' " *State v. Smith*, 162 Ohio App.3d 208, 2005-Ohio-

3579, 832 N.E.2d 1286, at ¶ 21, quoting, *State v. Greene*, 8th. Dist. Cuyahoga No. 82948, 2004-Ohio-2008, at ¶ 16, citing *State v. Teamer*, 82 Ohio St.3d 490, 492, 696 N.E.2d 1049 (1998).

**{¶45}** As noted above, a defendant's conviction for drug possession can be based upon circumstantial evidence of possession. *DeSarro*, 2015-Ohio-5470, ¶ 41. Officer Villaplana's testimony established that Appellant was the only person who was seated in the second row of the Durango. The three baggies of drugs were found behind the driver's side second-row seat. They were within the reach of only Appellant and not those in the front seat. An empty fanny pack was also found near where Appellant was seated, which Officer Eggleston, Jr. testified is usually used to transport guns or drugs. Appellant had $140 cash on his person. Moorer and Appellant are heard arguing about Appellant claiming ownership of the items, with Moorer stating that only the drugs found in the front seat were his. "When drugs are readily usable and found in very close proximity to a defendant these factors may constitute circumstantial evidence and support a conclusion that the defendant had constructive possession of the drugs." *State v. Blake*, 7th Dist. Columbiana No. 22 CO 0020, 2023-Ohio-2748, ¶ 26, citing *State v. Barker*, 7th Dist. Jefferson No. 05-JE-21, 2006-Ohio-1472, ¶ 78, quoting *State v. Kobi*, 122 Ohio App.3d 160, 174, 701 N.E.2d 420 (1997).

**{¶46}** Based upon the testimony presented at trial, the jury could have found that Appellant constructively possessed the three plastic baggies filled with drugs located behind the driver's side second-row seat. Thus, we find that the verdicts are not against the manifest weight of the evidence.

**{¶47}** For these reasons, the Court finds that Appellant's assignments of error lack merit and are overruled.

Waite, J., concurs.

Robb, P.J., concurs.

Case No. 23 MA 0043

[Cite as *State v. Fulton*, 2024-Ohio-671.]

---

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Mahoning County, Ohio, is affirmed.  Costs to be waived.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**